UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORRAINE BENSON,

        Plaintiff,

    -v-                                    15-CV-935(RJA)(HBS)

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

**REPORT AND RECOMMENDATION**

Before the Court are the parties' respective motions for summary judgment and judgment on the pleadings (Docket Nos. 11 (Plaintiff), 23 (defendant Commissioner)).[1]

**INTRODUCTION**

Plaintiff Lorraine Benson ("Plaintiff"), who is represented by counsel, brought this action pursuant to 42 U.S.C. § 405(g) to reverse the final decision of Defendant, the Commissioner of Social Security ("Commissioner" or "Defendant"), that Plaintiff is not disabled and therefore not entitled to Supplemental Security Income ("SSI") under the Social Security Act.

---

[1] Because both parties seek a final determination utilizing the record of proceedings at the Social Security Administration, the motions will be considered using the same standard as provided by Fed.R.Civ.P. 12(c). See Kocaj v. Apfel, No. 97 CIV. 5049, 1999 WL 461776, at *3 (S.D.N.Y. July 6, 1999); Graham v. Heckler, 580 F. Supp. 1238 (S.D.N.Y. 1984).

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on September 11, 2012, alleging disability beginning August 21, 2012 due to anemia, dizziness, fainting, seizures, and menopause. The application was denied initially and again on reconsideration, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared and testified at a hearing on December 3, 2013, in Fort Wayne, Indiana,[2] before ALJ William D. Pierson (R. 14, 28-71, 108-33, 182-88 ).[3] Also present at the hearing was an impartial vocational expert who provided testimony (R. 28-71).

On January 31, 2014, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act (R. 11-27). The Appeals Council denied Plaintiff's request for review on August 26, 2015, making the ALJ's disability determination the final decision of the Commissioner (R. 1-7).

This action followed (Docket No 1). Plaintiff seeks an order remanding the matter for further proceedings on the grounds that the ALJ failed in properly evaluating nonexertional impairments that were established by the record evidence, and because the ALJ failed to fully develop the record (Docket No. 12 at 4-18). Defendant, in her responsive motion, maintains that substantial evidence supports the Commissioner's final decision that Plaintiff was not disabled (Docket No. 23-1 at 6-15).

---

[2] Plaintiff moved to Buffalo, New York, sometime around April of 2015 (Docket No. 21 at 1).

[3] Citations to "(R.___)" refer to the certified record of the administrative proceedings.

## FACTUAL BACKGROUND

During the administrative hearing, Plaintiff testified that she was born in 1961, was 5'2" tall and weighed 237 pounds (R. 32-33). She is a high school graduate and attended two years of college (R. 35-36). She lived in an apartment with a friend and drove herself to the hearing (R. 33, 35).

Plaintiff's past work included owning a daycare service, but she stopped working in 2005 to care for her sick uncle who passed away in 2012 (R. 36-38, 62). Plaintiff testified that she had back pain since 2005 (R. 40, 43). She also had left knee pain, dizziness, and excessive menstrual bleeding (R. 40). Although Plaintiff's doctor recommended a hysterectomy for her menorrhagia, she told the ALJ that she refused the procedure because she would not be able to "properly care for [her]self" during the recovery time (R. 53-54). Plaintiff also reported "daily nervousness" and felt panicky since 2012, brought on by her pain and stressful situations (R. 40-41). Medication did not help her nervousness or back pain (R. 42-44).

Plaintiff's back pain limited her ability to lift, bend, and walk distances (R. 45). Plaintiff had left knee surgery for a meniscus tear (R. 48). Prior to the surgery, and at least twice per week, Plaintiff was able to walk only as far as the bathroom (R. 48-49). During that time, Plaintiff did not have insurance and was prescribed a cane (R. 49). Plaintiff applied for Medicaid and was approved in June of 2013 (R. 47-49). Even with medication, Plaintiff's knee pain rated as a ten on a scale of one to ten (R. 49-50). Plaintiff's knee buckled on her and she sustained bruises from falling (R. 50-51). Plaintiff used a crutch at her hearing (R. 53).

Beginning in 2012, Plaintiff's dizziness caused her to lose consciousness on several occasions (R. 51). After one such episode, Plaintiff went to the emergency room ("ER") in August, 2012, where she was given iron pills (R. 51-52). Plaintiff had lost consciousness once or twice since then (R. 52). She was compliant with taking her iron pills (R. 52).

Plaintiff told the ALJ that two or three times per week, she experienced lightheadedness, blurred vision, and slurred speech (R. 52). Plaintiff testified that her doctor did not know why she became dizzy (R. 52-53).

Plaintiff was able to care for her personal needs, grocery shop with a motorized cart once per week, attend church, read Bible studies, prepare simple meals, talk to her daughter on the telephone, and watch some television (R. 56-59, 65). Plaintiff reported difficulty with her attention span, concentration, and retention of information (R. 59-60). Plaintiff slept 3 or 4 hours per day (R. 60). Plaintiff was able to walk and stand for 10 minutes before having to stop (R. 61). She had to stand from a seated position every 15 minutes (R. 64).

Plaintiff's daughter completed a seizure questionnaire and function report in connection with Plaintiff's SSI application (R. 220-29). She reported that her mother had seizures twice per week, with the last one occurring on September 28, 2012. Plaintiff's daughter indicated that her mother fell out of her chair and was unresponsive (R. 220). In the function report, she stated that her mother sat down or lied down most of the day due to dizziness and exhaustion, did not care for relatives or pets, but could dress herself, bathe, eat, and use the bathroom without assistance (R. 223). Plaintiff could not remember to take medication, and was too unstable to prepare meals in the kitchen and

4

would fall if unattended (R. 224). Plaintiff's daughter stated that her mother got lost, wandered, and had trouble driving. She preferred to grocery shop and handle finances for her mother (R. 225). She reported that Plaintiff was anti-social, isolated and acted afraid of socializing with others (R. 226-28).

***Medical and Vocational Evidence***

Plaintiff was consultatively examined by Dr. Babatunde Onamusi on October 25, 2012 (R. 308-12). There she complained of recurrent dizziness and fainting spells that started months earlier, as well as back pain without radicular pain, paresthesia or leg weakness (R. 309). She told Dr. Onamusi that she had never been diagnosed with a seizure disorder (R. 309). Plaintiff further told the physician that she could sit for 30 minutes, stand for 15 minutes, and lift ten pounds (R. 310). She had back pain with bending and was able to do housework, laundry, grocery shop, drive, and personal grooming. She had no trouble using her hands for gross or fine motor tasks (R. 310).

Plaintiff's physical examination was unremarkable (R. 310-11). Her gait was normal and she did not require an assistive device for ambulation. She declined squatting and walking on heels or on toes, although she wore high-heeled shoes to the examination as noted by the physician. She also declined range of motion in the back. The back revealed tenderness in the lumbar paraspinal muscles with no spasms noted. Straight leg raising was negative bilaterally. Dr. Onamusi assessed: (1) report of iron deficiency anemia, probably secondary to menorrhagia; (2) back pain, probably secondary to degenerative disease of the spine; and (3) recurrent dizziness with fainting spells, etiology unclear. Dr. Onamusi opined that Plaintiff could perform at least light work (R. 311).

On October 29, 2012, State agency physician Dr. Robert Bond reviewed the evidence and opined that Plaintiff was able to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 20 pounds, and sit, stand, and walk for about six hours each in an eight-hour workday (R. 76, 78, 87). Plaintiff was able to occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl (R. 77). She could never climb ladders, ropes, or scaffolds and had to avoid unprotected heights and operating heavy machinery (R. 77-78). Dr. Bond opined that Plaintiff's examination was "basically normal. RFC given due to [complaints of] dizziness. This felt consistent with vertigo – [treating physician] had not mentioned this being a seizure" (R. 77).

Upon reconsideration, State agency consultant Dr. M. Brill affirmed Dr. Bond's assessment from October, 2012 (R. 97-101).

On May 31, 2013, Plaintiff was examined by Dr. Joshua Winters at Fort Wayne Orthopedics for low back and left knee pain complaints (R. 313-15). On examination, Plaintiff had full bilateral lower extremity strength and no hip pain (R. 314). Straight leg raising was negative. The left knee was tender. After reviewing the x-ray examination, Dr. Winters assessed Plaintiff with low back pain, left knee pain, and history of lumboasacral spondylosis and prescribed meloxicam, an anti-inflammatory (R. 314).

Plaintiff returned to Fort Wayne Orthopedics on July 1, 2013 with a primary complaint of knee pain. Dr. Winter recommended Plaintiff take an over the counter anti-inflammatory because her prescription medication caused her to become nauseated (R. 315-16).

A left knee MRI on July 25, 2013 revealed a torn medial meniscus (R. 317, 322, 325). Athroscopy was recommended and Plaintiff agreed to proceed (R. 317, 324).

Dr. John Drake evaluated Plaintiff on June 4, 2013. She was prescribed Provera for heavy menstrual bleeding (R. 349). Plaintiff cancelled a scheduled hysterectomy on July 25, 2013, due to a family emergency (R. 335, 341-42). On August 20, 2013, she saw Dr. Drake to discuss "other choices rather than hyst[erectomy]" (R. 335). Dr. Drake talked with her about delaying the surgery "until she ha[d] time," and suggested trying Aygestin for 15 days (R. 336).

At Plaintiff's September 17, 2013, follow-up visit to Dr. Drake, she continued to complain of excessive menstrual bleeding (R. 333). An endometrial sample was taken and sent for pathologic examination (R. 333-34). The biopsy results were benign (R. 359, 361).

Plaintiff underwent left knee arthroscopic surgery on October 15, 2013 (R. 363-64). At her post-op visit on October 24, 2013, Plaintiff used a crutch for ambulatory assistance and her symptoms were "overall . . . much improved" since surgery (R. 365, 368). Plaintiff was instructed to apply ice to the knee, and, when on even ground at home, to start to work with one and then no crutches. (R. 369).

At all times relevant to the ALJ's adjudication, Plaintiff was considered an individual "closely approaching advanced age" (50-54), with a high school education and past relevant work as a child monitor and nurse's aide (R. 21-22). The vocational expert identified Plaintiff's past job as a nurse's aide was medium, semi-skilled work (R. 250) and testified that Plaintiff's other past work as a self-employed child monitor was medium, semi-skilled (R. 69-70).

7

*The ALJ's Decision*

Applying the five-step sequential analysis, the ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since August 21, 2012; (2) Plaintiff's medically determinable impairments were lumbosacral spondylosis with osteophyte formation, anemia, left medial meniscal tear with mild degenerative changes, and obesity; (3) Plaintiff's impairments did not meet the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; and that she retained the ability to perform the full range of light work as defined in 20 C.F.R. § 416.967(b); (4) Plaintiff could not perform her past relevant work; and (5) applying Medical-Vocational Guideline 202.14, Plaintiff was not disabled (R. 17-22).

## DISCUSSION

*Legal Standards*

An individual is defined as disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," and "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A); 42 U.S.C. §§ 423(d)(2)(A), 1382c(a) (3)(B).

Such a disability will be found to exist only if an individual's physical or mental impairment or impairments are of such severity that he or she is not only unable to do [his or her] previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B). An impairment is severe if it "significantly limits the claimant's ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Plaintiff bears the initial burden of showing that an impairment prevents him or her from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, the burden shifts to the Commissioner to prove the existence of alternative substantial gainful work that exists in the national economy and which the Plaintiff could perform. Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In evaluating disability claims, an ALJ must employ a five-step inquiry: (1) whether the Plaintiff is currently working; (2) whether the Plaintiff suffers from a severe impairment; (3) whether the impairment is listed in Appendix 1 of the relevant regulations; (4) whether the impairment prevents the Plaintiff from continuing her past relevant work; and (5) whether the impairment prevents the Plaintiff from doing any kind of work. 20 C.F.R. §§ 404.1520 & 416.920; Berry, 675 F.2d at 467. If a Plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a).

In order to determine whether an admitted impairment prevents a claimant from performing his or her past work, the ALJ is required to review the Plaintiff's residual

functional capacity ("RFC") and the physical and mental demands of the work he or she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to his or her past relevant work given his or her RFC. Washington, 37 F.3d at 1442.

With respect to this Court's review of the Commissioner's final decision, it is "limited to determining whether the ALJ's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); see also 42 U.S.C. § 405(g). The Social Security Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). It is not this Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted).

*RFC Analysis*

Plaintiff contends that the ALJ erred determining Plaintiff's RFC when he failed to account for the additional nonexertional and postural limitations identified by the consultative examiner and the State agency review physicians. (Docket No. 12 at 5-16). Plaintiff also argues that, because the ALJ should have found that she had additional nonexertional limitations, the absence of vocational testimony renders the ALJ's step five denial unsupported by substantial evidence (Id. at 7).

A claimant's RFC is defined as "what an individual can still do despite his or her limitations." Desmond v. Astrue, No. 11-CV-0818, 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)). To determine RFC, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." Id. (citation omitted); 20 C.F.R. § 416.945(a). "Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." 20 C.F.R. § 404.1569a(a). Nonexertional limitations include postural limitations such as limitations in climbing, reaching, stooping, crawling, balancing, and kneeling. § 416.969a(c).

A. Dizziness and Fainting

Plaintiff contends that the ALJ failed to consider Plaintiff's nonexertional and postural limitations in determining her ability to perform the full range of light work due to ongoing dizzy spells (Docket No. 12 at 6-16). She does not challenge the ALJ's determination of "light work" on its own (Docket No. 12 at 4).

Here, the ALJ afforded "great weight" to the medical opinion of Dr. Onamusi and relied on this opinion in determining that Plaintiff was able to perform light work (R. 19). Dr. Onamusi's examination of Plaintiff was generally unremarkable with the exception of tenderness in the entire lumbar paraspinal muscles (R. 310-11). His assessment was iron deficiency anemia, back pain, and recurrent dizziness with fainting spells, etiology unclear (R. 311). Dr. Onamusi's diagnosis was based upon Plaintiff's report that she went to the ER the previous year for a fainting spell resulting in a loss of consciousness,

11

after which she was started on iron pills. She stated that she had fainting spells twice since she started taking iron pills, the last one occurring approximately three weeks prior to the consultative examination (R. 309). The physician noted that "[Plaintiff] has also seen her doctor for the recurrent fainting spells and several tests have been ordered to evaluate the fainting spell condition. She has no insurance to follow up on this" (Id.).[4] His medical source statement indicated that "she should be able to engage in at least light physical demand level activities as defined in the Dictionary of Occupational Titles" (Id. at 311). The ALJ accorded his opinion "great weight" as it was consistent with the overall record and the physical examination of Plaintiff, which "indicates that claimant is able to ambulate successfully without assistance, that she has full use of her upper extremities, and that she has only some tenderness of her lower back and left knee" (R. 19).

      The ALJ then afforded little weight to the State agency medical consultants, who found, among other things, that Plaintiff had the following postural limitations: occasional climbing of ramps/stairs; never climbing ropes/ladders/scaffolds; and occasional balancing, stooping, kneeling, crouching, and crawling due to complaints of dizziness (R. 77). Significantly, it appears the ALJ rejected the portions of those opinions relating only to the exertion level assigned (ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently; sit, stand, and/or walk for six hours in an eight-hour workday) in finding that "the claimant is limited to performing the full range of light work due to the alleged pain in her lower back and left knee" (R. 21). No mention is

---

[4] The record reflects that Plaintiff did obtain insurance in mid-2013.

made by the ALJ as to Plaintiff's anemia and/or dizziness and there is no explanation as to why those aspects of the State agency review physicians' opinions were rejected.

The balance of the record evidence indicates the following: Plaintiff sought emergency care on August 8, 2012 upon complaints of intermittent dizziness (R. 260). She was assessed with dizziness and a history of anemia prior to being discharged (R. 261, 264-65). On August 13, 2012, Plaintiff presented to her primary physician complaining of syncope within the week prior and progressive dyspnea on exertion (R. 298). Plaintiff was started on ferrous sulfate tablets during that visit (R. 298). One month later, Plaintiff reported a presyncopal episode for a few seconds while playing with her grandkids (R. 291). On September 25, 2012, Plaintiff reported two episodes of presyncope in two weeks, associated with vertigo, lightheadedness, and photosensitivity (289). Plaintiff was assessed with iron deficiency anemia and lightheadedness, and an MRI was recommended but not performed for financial reasons (289). She again complained of feeling dizzy on May 13, 2013 (R. 353).

Plaintiff also testified at the administrative hearing that she had experienced issues with dizziness, which began three years prior to the hearing. Her fainting spells (passing out) began in 2012. She testified that since her ER visit in summer of 2012, after which she received iron supplements, she had only fainted once or twice (R. 51-52). She told the ALJ that she continued to experience dizziness, lightheadedness, blurred vision, and slurred speech two to three times per week (R. 52). In finding Plaintiff's allegations and complaints less than fully credible, the ALJ stated only that "the record indicates that this condition [anemia] has been managed through the use of iron supplements" (R. 20).

Finally, Plaintiff's daughter completed a third-party function report which indicated that Plaintiff had difficulty cooking and cleaning due to dizziness (R. 222-29). The ALJ gave those statements "some consideration and weight," as they offered "insight into the severity of the claimant's impairments and how they affect her ability to function," and rejected them to the extent that they conflicted with the record regarding the effect of Plaintiff's significant impairments of back pain, knee pain, and anemia (R. 21).

B.  Nonexertional Impairments

The ALJ concluded that, in considering the totality of the evidence, Plaintiff had the RFC to perform work at the full range of light work due to a history of lumbosacral spondylosis with osteophyte formation, anemia, left medial meniscal tear with mild degenerative changes, and obesity (R. 21). Yet, with respect to her anemia, the ALJ determined only that the severe impairment was managed through the use of iron supplements. The ALJ's RFC determination fails to evaluate the extent that Plaintiff's severe impairment of anemia would impose functional limitations on her ability to work, and does not address the potential nonexertional limitations that appear to be associated with her anemia, such as dizziness and lightheadedness. While such an omission is not always determinative, see Drake v. Astrue, 443 Fed. Appx. 653, 657 (2d Cir. 2011) (summary order), without an assessment of any nonexertional limitations resulting from Plaintiff's anemia, such as the fatigue and dizziness that she complained of on multiple occasions, which the ALJ appears to at least partially credit, the objective medical evidence provides little insight into Plaintiff's functional limitations. See Golden v. Comm'r of Soc. Sec., No. 11-CV-654, 2014 WL 2215768, at *9 (N.D.N.Y. May 29,

2014) (remand required for ALJ to determine impact of nonexertional limitation of vertigo/syncope on plaintiff's RFC).

Because the ALJ's RFC finding failed to adequately account for Plaintiff's nonexertional limitations, the Court recommends that remand is appropriate. See Babcock v. Barnhart, 412 F. Supp. 2d 274, 281 (W.D.N.Y. 2006) (remanding where "the ALJ did not properly assess plaintiff's RFC in light of his nonexertional limitations. Specifically, the ALJ did not explain whether or how he considered certain medical source opinions in the record concerning the extent and severity of plaintiff's nonexertional limitations, and their effect on his ability to perform the full range of sedentary work.")

Defendant contends that the ALJ was not obligated to accept the postural limitations identified by the State agency review physicians (Docket No. 23-1 at 11). This argument overlooks the fact that the ALJ appears to have rejected that medical opinion insofar as it was inconsistent with Plaintiff's exertional limitation of "light work" as found by the consultative examiner and the newer medical evidence (R. 20-21). The ALJ did not expressly reject the postural limitations assigned by the reviewing physicians and made no mention of any postural limitations in the written opinion. In spite of the ALJ's recitation of Plaintiff's dizzy spells at least four times in his opinion, as well as the portions of Plaintiff's medical record indicating reported incidents of lightheadedness, vertigo, or loss of consciousness, the ALJ still concluded that Plaintiff had no or negligible nonexertional limitations. He has failed to state his reasons for such a conclusion and, therefore, it is impossible for this court to fully review the determination of the ALJ. See generally LaRock ex rel. M.K. v. Astrue, No. 10-CV-1019,

2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011) ("[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of the ALJ's decision.") (citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)); see also Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir.1995); Pacheco v. Barnhart, 2004 WL 1345030, at *4 (E.D.N.Y. June 14, 2004) ("It is self-evident that a determination by the [ALJ] must contain a sufficient explanation of [his] reasoning to permit the reviewing court to judge the adequacy of [his] conclusions."). Thus, remand is also appropriate because it is unclear which portions of the evidence were credited or rejected in determining Plaintiff's RFC. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (where "we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision," remand is appropriate).

    C.    <u>Application of the Medical-Vocational Guidelines</u>

In this matter the ALJ appears to have relied on Social Security Rulings ("SSR") 83-12 and 83-14, to again impliedly find that no nonexertional limitations existed, or that they were negligible. He then proceeded to apply the Medical-Vocational Guidelines in finding Plaintiff not disabled (R. 22).

The guidelines are used as a framework for evaluating exertional limitations between ranges of work (SSR 83-12) and for evaluating a combination of exertional and nonexertional impairments (SSR 83-14). While the "mere existence" of a non-exertional impairment does not preclude reliance on the guidelines, Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1996), the ALJ is required to consult a vocational expert when the claimant possesses non-exertional limitations that "significantly limit the range of work permitted

16

by [her] exertional limitations." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp, 802 F. 2d at 605).

Upon remand, the ALJ's reassessment of Plaintiff's RFC and the inclusion of additional nonexertional limitations may make reliance on the guidelines at step five inappropriate (Docket No. 12 at 7). The ALJ should therefore consider Plaintiff's nonexertional limitations and whether application of the guidelines is precluded. See Chavis v. Astrue, No. 11–CV–00220, 2012 WL 6150851 at *14 (N.D.N.Y. Sept. 21, 2012) (an "ALJ's failure to address the Plaintiff's nonexertional physical limitations and then determine whether or not they significantly limited the range of work permitted by her exertional limitations require remand on those issues")

Because the ALJ failed to consider the impact of Plaintiff's dizziness and fainting spells in determining her RFC, such limitations were not presented to the vocational expert. On remand, the ALJ can present any additional limitations, if applicable, to a vocational expert for consideration. See Mages v. Colvin, No. 14-CV-00828, 2017 WL 2713727, at *4 (W.D.N.Y. June 24, 2017) ("The Court notes that the RFC finding is likely to be altered on remand. Thus, the ALJ is directed to obtain vocational expert testimony regarding plaintiff's nonexertional impairments if the RFC finding on remand indicates that nonexertional impairments will 'have more than a negligible impact on [plaintiff's] ability to work.'") (quoting Cortright v. Colvin, 2014 WL 4384110, at *14 (S.D.N.Y. Aug. 29, 2014)).

Viewing the record as a whole, the ALJ's finding that Plaintiff has negligible or no nonexertional limitations is unsupported by substantial evidence. Accordingly, the Court recommends that Plaintiff's motion for judgment on the pleadings (Docket No. 11) be

granted, Defendant's motion for judgment on the pleadings dismissing the complaint (Docket No. 23) be denied, and this matter be remanded to the Commissioner for further proceedings in accordance with this decision.[5]

***Development of the Record***

Plaintiff next claims that the ALJ did not fulfill his duty to develop the record with respect to her knee pain (Docket No. 12 at 15-18). The Court does not agree. The ALJ possessed a complete medical history in the form of objective medical findings, diagnostic test results, and medical source opinions, and consultative examination was ordered (R. 309-11). The consultative examination was generally unremarkable. The records post-dating Plaintiff's knee surgery further reveal that her condition had improved, and she was advised to increase her activity level and discontinue the use of her crutch when ready (R. 363-70). Plaintiff was not treated for her knee pain between October 23, 2013, the date of her last follow-up appointment, and the date of the administrative hearing on December 3, 2013 (R. 19, 28-71). With respect to the State agency review physicians' opinions that pre-dated Plaintiff's knee surgery, the ALJ considered and accounted for the developments in Plaintiff's medical records as well as the consultative examination, which resulted in a more limited RFC specific to her knee condition. There are therefore no "obvious gaps" in the administrative record that preclude an informed decision in this regard. Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotation omitted).

---

[5] Although remand is recommended for this particular issue, the Court expresses no opinion regarding the ultimate outcome of Plaintiff's claim.

In any event, because remand is recommended for reconsideration of Plaintiff's RFC, and whether any nonexertional limitations apply, the ALJ may further develop the record as he sees fit.

**CONCLUSION**

For the foregoing reasons, this Court recommends that the decision of the Commissioner be reversed and this matter be remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 23) should be denied and Plaintiff's motion for similar relief (Docket No. 11) should be granted.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and Loc. R. Civ. P. 72(b).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Mass. Mun.Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to Loc. R. Civ. P. 72(b), "Written objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.

SO ORDERED.

*/s Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Dated: October 4, 2017
Buffalo, New York